IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| OMAR COLON and ARLENE DAVIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION No. 3:13-cv-00325 |
| METRO-NORTH COMMUTER RAILROAD | ) | (AWT) |
| COMPANY, a public benefit corporation of the | ) | |
| State of New York and the METROPOLITAN | ) | April 10, 2014 |
| TRANSPORTATION AUTHORITY, a public | ) | |
| benefit corporation of the State of New York | ) | |
| | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| UNITED ILLUMINATING COMPANY, | ) | |
| | ) | |
| Third Party Defendants. | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT

Plaintiffs, MILTON OMAR COLON ("COLON" or "OMAR COLON") and ARLENE

DAVIS ("DAVIS"), sue Defendants, METRO-NORTH COMMUTER RAILROAD

COMPANY ("METRO-NORTH" or "DEFENDANT"), and the METROPOLITAN

TRANSPORTATION AUTHORITY ("MTA" or "DEFENDANT"), and allege:

### VENUE AND JURISDICTION

1.      This Court has jurisdiction over this action and the parties because Plaintiffs are

residents and citizens of the State of Connecticut and Defendants, METRO-NORTH and the

MTA are New York Corporations, formed, incorporated, located and operating in the State of

New York with their principal places of business located in the State of New York.

2.      This Court also has jurisdiction over this action and the parties because each of the Defendants is engaged in a joint business operation and/or joint venture with each other in regard to the Defendants' operation, use, and maintenance of the subject high-voltage electric transmission Tower #1043 and the high-voltage electric transmission lines attached to Tower #1043, all of which are located in and around West Haven, Connecticut. The right-of-way and the subject Tower #1043 are public property owned by the State of Connecticut and the Connecticut Department of Transportation, but used by Defendants and members of the public.

3.      This Court also has jurisdiction over this action and the parties because all of the Defendants are parties to contracts and written agreements entered into in the State of Connecticut in regard to the Defendants' operation, use, and maintenance of the subject high-voltage electric transmission tower #1043 and the high-voltage electric transmission lines attached to Tower #1043, all of which are located in and around West Haven, Connecticut. The right-of-way and the subject Tower #1043 are public property owned by the State of Connecticut and the Connecticut Department of Transportation, but used by Defendants and members of the public.

4.      Jurisdiction in this matter and venue in this court is based upon the Defendants' violation of Connecticut Common Law and Connecticut Statutory Law, including violation of the Connecticut State Regulations, Section 16-11-102(a), et. seq. and the Defendants' violation of the National Electric Safety Code and violation of the rules, orders and Regulations of Connecticut State Agencies, which require effective and legible warnings and signage and other protections and barriers to protect and warn the Plaintiff, OMAR COLON, from the hazard of the high-voltage electric transmission lines attached to Tower #1043, and the resulting energy fields, all of which are located in and around West Haven, Connecticut.

5. Venue is proper in this Court because all or a substantial part of the events giving rise to Plaintiffs' claims occurred in and around West Haven, Connecticut, which is within this Court's jurisdiction.

## PARTIES

6. Plaintiff, MILTON OMAR COLON ("OMAR COLON"), is a resident of New Haven, Connecticut, and is a citizen of the State of Connecticut. At all times material, Plaintiff, MILTON OMAR COLON, was the spouse and husband of Plaintiff, Arlene Davis. At all times material, Plaintiff is a consumer of the public transportation services provided by Defendants.

7. Plaintiff, OMAR COLON, was severely injured when Plaintiff came into contact with high-voltage electric power lines attached to the subject Tower #1043, located in West Haven, Connecticut, used, controlled, operated and/or maintained by the Defendants. The right-of-way and the subject Tower #1043 are public property owned by the State of Connecticut and the Connecticut Department of Transportation, but are used by Defendants.

8. Plaintiff, ARLENE DAVIS, is a resident of New Haven, Connecticut, and is a citizen of the State of Connecticut. At all times material, Plaintiff, ARLENE DAVIS was the spouse and wife of Plaintiff, OMAR COLON, and Plaintiff, ARLENE DAVIS was married to Plaintiff, OMAR COLON, on March 17, 2011, the date of the subject incident.

9. Defendant, METRO-NORTH COMMUTER RAILROAD COMPANY, is a corporation organized and existing under the laws of the State of New York. At all times material to this action, METRO-NORTH managed, operated, used and maintained a high-voltage electric transmission tower identified as the subject Tower #1043, located along side a railroad track in West Haven, Connecticut. At all times material to this action, Defendant, METRO-NORTH, used, operated, maintained and managed high-voltage electric power lines, poles and

wires attached to the subject Tower #1043, but Defendants do not own any of this property. The right-of-way and the subject Tower #1043 are public property owned by the State of Connecticut and the Connecticut Department of Transportation, but used by Defendants.

10.     At all times material to this action, Defendant, METRO-NORTH, operated, managed and controlled the towers, poles, wires, conduits and other fixtures for transmission of electricity, but Defendants do not own any of this property. At all times material to this action, Defendant, METRO-NORTH, provided high-voltage electric transmission services through the poles, wires, conduits and other fixtures attached to the subject Tower #1043.

11.     At all times material, Defendant METRO NORTH used and maintained the real property consisting of the railroad right-of-way on which Tower #1043 is located, and on which are located the railroad tracks used by METRO-NORTH to operate their trains powered by the high-voltage electric power lines attached to Tower #1043, but Defendants do not own any of this property.

12.     Defendant, THE METROPOLITAN TRANSPORTATION AUTHORITY, is a corporation organized and existing under the laws of the State of New York. At all times material to this action, the MTA operated, used, and/or maintained a high-voltage electric transmission tower identified as the subject Tower #1043, located along side a railroad track in West Haven, Connecticut, but Defendants do not own any of this property. The right-of-way, tracks, and the subject Tower #1043 are public property owned by the State of Connecticut and the Connecticut Department of Transportation, but used by Defendants. At all times material to this action, Defendant, MTA used, operated, maintained and/or controlled the right-of-way, and high-voltage electric power lines attached to the subject Tower #1043, but Defendants do not own any of this property.

13. At all times material to this action, Defendant, THE METROPOLITAN TRANSPORTATION AUTHORITY, operated, managed and/or controlled poles, wires, conduits and other fixtures for transmission of high-voltage electricity. At all times material to this action, Defendant, THE METROPOLITAN TRANSPORTATION AUTHORITY, provided high-voltage electric transmission services through the poles, wires, conduits and other fixtures attached to the subject Tower #1043.

14. At all times material, Defendant, METROPOLITAN TRANSPORTATION AUTHORITY, used, and maintained a portion of the real property consisting of the railroad right-of-way on which Tower #1043 is located, and on which are located the railroad tracks used by the MTA to operate their trains powered by the high-voltage electric power lines attached to Tower #1043, but Defendants do not own any of this property.

## DEFENDANTS' JOINT OPERATION/JOINT VENTURE

15. At all times material to this action, Defendant, METRO-NORTH was engaged in a joint business operation and/or joint venture with Defendant, MTA, in regard to their joint use, operation, and maintenance, of Tower #1043 and all warning signs on Tower #1043 to operate a high-voltage electric transmission system. At all times material, Defendants utilized high voltage electric poles, wires, fixtures and/or conduits to draw electric energy from their equipment to operate their trains.

16. At all times material to this action, Defendant, METROPOLITAN TRANSPORTATION AUTHORITY was engaged in a joint business operation and/or joint venture with the other Defendant, METRO-NORTH, in regard to their joint use, operation, and maintenance of Tower #1043 and of all warning signs on Tower #1043 to operate their high-voltage electric transmission system. At all times material, Defendants utilized high voltage

electric poles, wires, fixtures and conduits to draw electric energy from their equipment to operate their trains.

17.    At all times material, Defendants, METRO-NORTH and the MTA have acted together in regard to the use, and maintenance, of Tower #1043, the subject ladder system and the attached high-voltage electric power lines, poles, wires, fixtures, and conduits. The right-of-way, tracks, and the subject Tower #1043 are public property, owned by the State of Connecticut, but used by Defendants and members of the public.

18.    At all times material, Defendants, METRO-NORTH and the MTA acted together to provide high-voltage electricity to their trains by their activities and use of Tower #1043, the subject ladder system and the attached high-voltage electric power lines, poles, wires, fixtures, and conduits.

## STATE OF CONNECTICUT'S PUBLIC OWNERSHIP OF RIGHT-OF-WAY AND TOWER #1043.

19.    At all times material, the State of Connecticut and the Connecticut Department of Transportation <u>owned</u> the railroad right-of-way on which Tower #1043 and the above ladder system is located, in West Haven, Connecticut.  At all times material, the State of Connecticut and the Connecticut Department of Transportation <u>owned</u> Tower #1043 and its ladder system, but Defendants maintained and used Tower #1043 and its ladder system to carry out their high-voltage electric transmission system.

## DEFENDANTS' USE AND MAINTENANCE OF TOWER #1043 AND ITS LADDER SYSTEM

20.    At all times material, Defendant, METRO-NORTH, maintained, used, operated and/or managed Tower #1043, in West Haven, Connecticut.  At all times material, Tower #1043 has a lattice-work ladder which extends from the ground level base to the high-voltage electric

transmission lines attached to Tower #1043, and Defendants were aware of this lattice work ladder and its danger to the public. This lattice/work ladder system allows any person, especially children and young adults, to climb Tower #1043 from the ground level base all the way to the top of Tower #1043 and to close proximity to Defendant's high-voltage electric power lines. Similar ladder systems are used and maintained by Defendants on various adjoining and nearby towers, which are regularly accessed and used by children and young adults.

21.     At all times material, Defendant, METRO-NORTH, and Defendant, MTA, used, operated, managed, and/or maintained Tower #1043 and the above ladder system. At all times material, Defendants operated, managed, controlled and maintained Tower #1043's ladder system, and the poles, wires, fixtures and conduits attached to Tower #1043.

22.     At all times material, Defendant, METRO-NORTH and Defendant, MTA, operated, used, and/or maintained Tower #1043, and its ladder system and the attached high-voltage electric power lines. At all times material, Tower #1043 wires and high voltage electricity were operated, managed, maintained, controlled and used by Defendants.

23.     At all times material, all of the Defendants were parties to various contracts and written agreements, wherein the Defendants agreed to jointly use, operate, manage, inspect, police, construct, repair, and maintain the above-described Tower #1043, its ladder system and the attached high-voltage electric power lines.   These contracts and agreements are in the possession of the Defendants and Plaintiff has attached copies of the Defendants' agreements available to Plaintiff.

## **DEFENDANTS' AGREEMENTS TO OPERATE TOWER #1043**

24.     On or about June 21, 1985, METRO-NORTH and the MTA entered into an Amended and Restated Service Agreement (the "**Amended and Restated Service Agreement**")

with the State of Connecticut and the Connecticut Department of Transportation. A copy of this Agreement is attached as **Exhibit "A"**.

25. Under the terms of the June 21, 1985 Amended and Restated Service Agreement, Defendants METRO-NORTH and MTA are liable for all damages or injuries sustained by Plaintiffs or other persons coming into contact with METRO-NORTH'S and MTA's high-voltage electric power lines, including the power lines, poles wires, fixtures and conduit on the subject Tower #1043.

26. Under the terms of the June 21, 1985 Amended and Restated Service Agreement, Defendants, METRO-NORTH and the MTA are required to follow the National Electric Safety Code and all Connecticut statutes, laws, Rules, Regulations, and Orders, and all federal laws and statutes, rules and regulations regulating safety and high-voltage electric lines and the provision and transmission of high-voltage electricity in Connecticut.

27. Under the terms of the June 21, 1985 Amended and Restated Service Agreement, Defendants, Metro-North and MTA, were obligated to insure compliance with the National Electric Safety Code especially in regard to Tower #1043, its ladder systems, its warning signs and Defendants' high-voltage electric power lines, including the power lines, poles wires, fixtures and conduit on the subject Tower #1043.

28. Under the terms of the June 21, 1985 Amended and Restated Service Agreement, Defendants, Metro-North and MTA, were obligated to insure compliance with Section 16-11-102 (a) of the Connecticut State Regulations especially in regard to Tower #1043, its ladder systems, its warning signs and Defendants' high-voltage electric power lines, including the power lines, poles wires, fixtures and conduit on the subject Tower #1043.

29.     Under the terms of the June 21, 1985 Amended and Restated Service Agreement, Defendants, Metro-North and MTA, were obligated to insure compliance with Connecticut Statutes, including chapters 242, 245, 282, 283 and 290, along with all Connecticut Rules, Regulations and Orders issued there under especially in regard to Tower #1043, its ladder systems, its warning signs and Defendants' high-voltage electric power lines, including the power lines, poles, wires, fixtures and conduit on the subject Tower #1043.

30.     Under the terms of the June 21, 1985 Amended and Restated Service Agreement, Connecticut Statutes, Rules and Regulations, and the National Electric Safety Code, Defendants, Metro-North and MTA, were obligated to post legible and effective warning signs on Tower #1043 and were required to erect effective barriers on and/or fences around Tower #1043, so that the lattice/work ladder system could not be used by persons, such as Plaintiff, to climb Tower #1043.

31.     Notwithstanding their above obligations, METRO-NORTH and the MTA violated their above obligations and duties under the 1985 Restated Service Agreement and under the Defendants other agreements with the state of Connecticut and under the above state and federal statutes, Rules, Regulations, Orders and industry standards.

## ADJOINING AREAS/PUBLIC RECREATION LANDS

32.     At all times material, the subject railroad right-of-way, railroad tracks, Tower #1043 and the attached high-voltage electric power lines are surrounded by wildlife areas and recreation areas. At all times material, these adjoining areas were occupied and used by members of the public and local Connecticut residents, especially children and young adults, on a constant and continuing basis for recreation and other uses, and Defendants were aware of these facts and this continuous use by the public.

33. At all times material, the area immediately adjoining the subject public-owned railroad right-of-way and Tower #1043 consists of public transportation walkways and consists of a large area of public and private brush and woodlands which function as a public recreation area, wildlife refuge and wildlife preserve (the "wildlife area"). This wildlife area is occupied by various wild animals and local fauna, including deer, fox, turkey and other native species. At all times material, these public and private walkways, woodlands and wildlife area have had numerous walking and riding trails which were routinely and continuously used by the public local residents and other persons, especially children and young adults. At all times material, Defendants were aware of and had notice of these facts.

34. At all times material, the area immediately adjoining the subject railroad right-of-way and Tower #1043 is crossed or intersected by various public roadways and public walkways. At all times material, members of the public, local residents and other persons routinely and continuously gather, climb, walk on and use the railroad right-of-way for various public purposes. At all times material, children and young adults use this property to congregate, recreate, and socialize. At all times material, Defendants were aware of and had notice of these facts and this continuous use and access by the public.

35. At all times material, the surrounding areas adjoining the subject railroad right-of-way and Tower #1043 with its high-voltage electric lines, were routinely and continuously used and walked upon by members of the public, local residents and other persons, especially children and young adults, who thereby came into continuing and direct contact with the railroad right-of-way, high-voltage electric power and transmission towers, including Tower #1043, and painted graffiti and climbed upon the other structures, including Tower #1043. At all times material, Defendants were aware of and had notice of these facts and this use by the public.

-10-

36.    At all times material, local residents and other persons were walking on the public right-of-way and climbing on the high-voltage electric power and transmission towers, including Tower #1043 for the purpose of painting various names, information and graffiti.  At all times material, Defendants were aware of and had notice of these facts and this use by the public.

## DEFENDANTS' INEFFECTIVE WARNING SIGN AND
## ABSENCE OF POSTED, LEGIBLE "NO TRESPASSING" SIGNS

37.    At all times material, and for many months and years before Plaintiff's March 17, 2011 injury, Defendants had acted together to post a single warning signs on Tower #1043, which was painted over, obscured and ineffective and non-functional as a warning sign. At all times material, Defendants owned the defective and obscured warning sign on Tower #1043 and this warning sign provided no effective warnings to Plaintiff. At all times material, legible "No Trespassing" signs were not posted on or around the right-of-way or Tower #1043 and were not posted on the publicly owned grassy area adjoining Tower #1043, such that Plaintiff was not trespassing at the time of his injury.

38.    At all times material, Defendants had acted together to post an ineffective warning sign on Tower #1043, but had failed to properly maintain this painted-over warning sign.  As a direct result, the Defendants' warning sign on Tower #1043 was completely covered up by whitewash/paint and completely obscured by writing/graffiti and paint, such that Defendants' sign failed to provide any warning. Additionally, Defendants failed to post effective warning signs, and Defendants failed to post effective or legible "No Trespassing" signs on the publicly owned grassy right-of-way area adjoining Tower #1043. All such signs should have been posted on both sides of Tower #1043, which would then be observable in both directions. This condition had existed for many weeks, months or years prior to March 17, 2011, and

Defendants were aware of the sign's condition for many weeks, months or years prior to March 17, 2011.

## NOTICE TO DEFENDANTS OF DEFECTIVE
## SIGNAGE AND ABSENCE OF LEGIBLE SIGNS

39.     At all times material, Defendants had actual and constructive notice that the Defendants' warning sign located on Tower #1043 had been painted over and obscured by whitewash/paint and then further covered over by writing/graffiti, and paint, such that the Defendants' warning sign was ineffective and no longer functioned as a reasonable or even readable warning. Defendants were aware of these facts for many weeks, months or years before March 17, 2011. At all times material, Defendants routinely inspected Tower #1043 and its ineffective warning sign, prior to March 17, 2011.

40.     At all times material, Defendants were the users and controllers of the subject of Tower #1043 owned by the State of Connecticut, and the attached high-voltage electric power lines, all of which are attached to the public-owned land and the public-owned right-of-way.

## NOTICE TO DEFENDANTS OF
## PUBLIC'S CONTINUOUS USE AND CONTACT

41.     At all times material, Defendants were on notice that members of the public, local residents and other persons, especially minor children and young adults, had walked on the public right-of-way and had climbed on Tower #1043. At all times material, Defendants were on notice that these individuals had uncontrolled access to the public right-of-way and to Tower #1043 for the purpose of whitewashing and painting Defendants' warning sign and painting writing/graffiti over the sign and on Tower #1043. At all times material, the Defendants were on notice that large numbers of individuals, especially minor children and young adults, had routinely and frequently walked along and on the subject right-of-way and had climbed and

painted on numerous adjoining public electrical towers, including but not limited to Tower #1043.

42.     At all times material, Defendants either knew or should have known from the facts known by Defendants that members of the public, nearby residents and other persons, especially children and young adults, were constantly and continuously walking upon the limited area of the land consisting of the subject public right-of-way, public walking areas and Tower #1043. At all times material, Defendants knew or should have known that teenagers and young adults were congregating in and around the right-of-way and Tower #1043. As a result, Defendants had actual or constructive notice of the public continuously using and coming into contact with Tower #1043 and the adjoining public right-of-way and public walking areas.

43.     At all times material, the Defendants inspected, used and maintained the public owned right-of-way and public-owned Tower #1043 including Defendants' attached underinsulated high-voltage electric transmission lines. Additionally, Defendants knew that the high-voltage electric power lines and the resulting electrical field were likely to cause death or serious bodily harm to persons climbing on Tower #1043.

44.     At all times material, Defendants knew that members of the public and other persons climbing on Tower #1043 would not know that climbing on Tower #1043 was likely to cause death or serious bodily harm through electric shock or electric arc. Further, Defendants knew that public and other persons were frequently climbing nearby high-voltage electric power and transmission towers, including Tower #1043, unaware of the danger and risk from the uninsulated high-voltage electric power lines or the resulting electrical field and electric arc/shock.

-13-

45.     At all times material, Defendants had actual and constructive knowledge that members of the public and other persons were continuously coming onto the public right-of-way and climbing onto Tower #1043 as well as climbing upon and painting/writing graffiti on the adjoining Towers #1042(a), 1042, 1041 and 1040, as well as on several other adjoining electrical towers and structures on both sides of the track upon the limited area of the land surrounding Tower #1043.

## DEFENDANTS' DUTY OF CARE AND DUTY TO WARN

46.     At all times material, by posting a warning sign on Tower #`1043, Defendants had undertaken a duty to reasonably and adequately post, repair, replace and maintain unobscured and effective warning signs on Tower #1043.  At all times material, Defendants were jointly and severally responsible for carrying out this duty by posting and maintaining and repairing the subject warning sign on Tower #1043. Further, Defendants were under a duty to post and maintain and repair legible and easily readable "No Trespassing" signs on Tower #1043 and on the grassy right-of-way.

47.     At all times material, Defendants had a duty to refrain from causing injury to members of the public and other persons, especially children and young adults, who were routinely walking on the public-owned right-of-way and/or climbing the subject electrical towers, especially Tower #1043.  At all times material, Defendants had a duty to take reasonable and effective precautions to prevent persons, especially children and young adults, from being injured as a result of climbing the lattice/work ladder system on the subject electrical towers or coming close to the high-voltage electric power lines and the resulting electrical energy fields.

## APPLICABLE CODES, REGULATIONS AND INDUSTRY STANDARDS

48.     At all times material, the National Electric Safety Code, Connecticut Regulations, the Defendants' own rules and standards, and other generally accepted public industry standards required that the Defendants post and maintain reasonable, readable and effective warning signs to warn and prevent unauthorized persons from climbing Tower #1043 and its lattice work ladder system.

49.     At all times material, the National Electric Safety Code, Connecticut Regulations, the Defendants' own rules and standards, and other generally accepted industry standards required that the Defendants control the right-of-way and erect effective barriers and/or fences to prevent members of the public and other persons from climbing Tower #1043.

## DEFENDANTS VIOLATION OF CONNECTICUT REGULATIONS

50.     At all times material, Section 16-11-102(a) of the Regulations of Connecticut State Agencies provides that, **"Every utility shall use every effort to properly warn and protect the public from danger and shall exercise all possible care to reduce the hazard to which employees, customers and others may be subjected by reason of its equipment and facilities."**

51.     At all times material, Section 16-11-100(a) of the Regulations of Connecticut State Agencies provides in pertinent part that, **"utility" means a railroad, electric, telephone or telegraph company owning, leasing, maintaining, operating, managing or controlling…equipment in this state, but shall not include towns, cities, boroughs or any municipal corporation or department thereof, whether separately incorporated or not.** At all times material, Defendants, METRO-NORTH and the MTA were required to follow and comply with Section 16-11-102(a), et seq., an**d use every effort to properly warn and protect**

**the public from danger and …to… exercise all possible care to reduce the hazard to which employees, customers and others may be subjected by reason of its equipment and facilities."**

52.    At all times material, Defendants, METRO-NORTH and the MTA, were aware of and controlling and managing the activities of a separate utility company, which was using, constructing, maintaining, controlling and operating high-voltage power lines on top of Tower #1043. At all times material, Defendants, METRO-NORTH and the MTA, were acting as a utility, as defined by Connecticut law, especially in regard to protecting the public from Defendants' uninsulated high-voltage electric power lines.

53.    At all times material, Defendants were aware that a utility subject to section 16-11-102(a) was using the top of Tower #1043 and its high-voltage power lines, such that the Defendants are jointly and severally responsible for complying with their duties set forth in Section 16-11-102(a), et seq.

54.    At all times material, Defendants were aware of their duties as a utility under Section 16-11-102 (a), et seq. At all times material, Defendants were engaged in and responsible for making sure that Defendants' use of Defendant's Tower #1043 was in compliance with Section 16-11-102-(a).

55.    At all times material, Defendants were under a duty to refrain from injuring the Plaintiff through Defendants' conduct, negligence and/or failure to post and maintain adequate warnings on Tower #1043 and to erect appropriate barriers, shields and/or fences around or on Tower #1043, but Defendants failed to comply with their obligations.

56.    At all times material, Defendants were obligated to comply with the applicable Federal and Connecticut Statutes, Rules, Regulations, and Orders for safety and protecting the

public form Defendants' high-voltage uninsulated electric transmission lines, but Defendants failed to comply with their obligations.

## DEFENDANTS' BREACH OF DUTY

57.     At all times material, Defendants breached their duty and failed to exercise reasonable care to erect barriers, shields or fences, and to warn the public, including Plaintiff, of the dangerous condition presented by climbing Tower #1043, and by coming close to the high-voltage electric power lines and the resulting electrical energy field.

58.     At all times material, Defendants breached their duty and injured the Plaintiff through their conduct, including but not limited to the following:

a.     Defendants failed to take reasonable steps to to install effective barriers, shields, fencing, barbed wire or plastic, wooden, or other sheet-like shields on Tower #1043 or otherwise prevent Plaintiff from being able to climb Tower #1043 and its ladder system.

b.     Defendants failed to take reasonable steps to provide adequate warning to the Plaintiff of the danger presented by Tower #1043 and its high-voltage uninsulated electric transmission lines.

c.     Defendants failed to take reasonable steps to provide adequate and effective warning to the Plaintiff of the danger presented by the electrical energy field on Tower #1043.

d.     Defendants failed to take reasonable steps to either insulate the metal lattice/work ladder and metal platform on Tower #1043, or in the alternative, specifically warn Plaintiff of the dangers presented by the metal lattice/work ladder and metal platform in close proximity to the nearby energy fields and high-voltage electric transmission lines.

e.    Defendants failed to take reasonable steps to provide adequate warning to the Plaintiff of the danger presented by the uninsulated high-voltage electric power lines on Tower #1043.

f.    Defendants failed to take reasonable steps to repair and maintain the warning sign placed on Tower #1043, such that the warning sign was completely obscured and ineffective. Additionally, Defendants failed to post warning signs which would be observable by persons approaching Tower #1043 form both directions next to Defendant's tracks.

g.    Defendants failed to comply with their duties under Section 16-11-102(a) et. seq., by failing to properly warn and protect Plaintiff and reduce the hazard to Plaintiff by reason of Defendants' equipment and facilities.

h.    Defendants failed to insure that any separate utility using Tower #1043 complied with the duties under Section 16-11-102(a) et. seq., by failing to properly warn and protect Plaintiff and reduce the hazard to Plaintiff by reason of the equipment and facilities.

i.    Defendants failed to comply with their duties under Section 16-11-102(a) et. seq., by failing to properly install and post effective "No Trespassing" signs and protect Plaintiff and reduce the hazard to Plaintiff by reason of Defendants' equipment and facilities.

j.    Defendants failed to insure that any separate utility using Tower #1043 complied with the duties under Section 16-11-102(a) et. seq., by failing to install and post effective "No Trespassing" signs and protect Plaintiff and reduce the hazard to Plaintiff by reason of the equipment and facilities.

k.    Defendants failed to take reasonable steps to prevent members of the public from climbing and painting and writing graffiti on Tower #1043 and nearby electric towers and

ladders, including the failure to erect barriers on the Tower and/or to erect fences or other barriers at the ground level.

l.     All of the above precautions and steps were reasonable, available and inexpensive to implement, and Defendants were so aware and had notice.

### DANGEROUS ACTIVITY/AND
### DANGEROUS CONDITION/ACTIVITY

59.     At all times material, Defendants' use of Tower #1043 for transmission of electricity over un-insulated high-voltage electric power lines, with resulting electrical energy fields, is a dangerous activity and creates a dangerous condition, of which Defendants were aware and of which Defendants had notice. This dangerous condition is made more dangerous by Defendants' lattice/work-ladder system which extends from ground level all the way to Defendants' un-insulated high voltage electric transmission power lines, all without effective warning signs.

60.     At all times material, Defendants, METRO NORTH and the MTA are either a generator of high-voltage electricity or a transmitter of high-voltage electricity, or are both. At all times material, the other Defendants have acted in conjunction with each other to use public property including Tower #1043 to carry out METRO NORTH'S and the MTA'S transmission, consumption, and use of high-voltage electricity through their joint efforts to use, manage and maintain Tower #1043 and its attached un-insulated high-voltage electric power lines, such that the Defendants are engaged in a dangerous activity, which requires that Defendants take precautions to warn and protect the public.

-19-

## PLAINTIFF'S INEXPERIENCE WITH HIGH-VOLTAGE ELECTRICITY AND DEFENDANTS' UN-INSULATED HIGH-VOLTAGE WIRES

61.     On March 17, 2011, Plaintiff, OMAR COLON, had <u>no</u> significant or real experience with or knowledge of the dangers of high-voltage electricity or un-insulated power lines, such that Plaintiff, OMAR COLON, could <u>not</u> appreciate the high voltage danger presented by Tower #1043, its ladder system and its attached high voltage electric transmission lines, energy fields, un-insulated wires and the potential for electric arc/shock.

62.     Further, the Defendants' failure to maintain Tower #1043 and its adjoining structures showed that members of the public, including children and young adults, had routinely and previously safely climbed on Tower 1043 and on adjoining towers and structures to paint and write on them, thereby giving the impression that it was safe to climb on Tower #1043 and its lattice/work ladder system.

## MARCH 17, 2011 INCIDENT

63.     On March 17, 2011, Plaintiff, OMAR COLON, walked over and through the wildlife area which adjoins the public's right-of-way and public walkways and directly adjoins the public-owned Tower #1043 with its attached high-voltage electric power lines.  At this time, MILTON OMAR COLON was engaged in the lawful activity of enjoying nature and observing wildlife species, and walking on the public property owned by the State of Connecticut. At this time and place, there was no visible or readable sign posting a "No Trespassing" warning. At this time, Plaintiff was <u>not</u> trespassing and was <u>not</u> trespassing on property owned by Defendants.

64.     On March 17, 2011, Plaintiff, OMAR COLON, observed a small number of wild deer roaming in the wildlife area. On March 17, 2011, in an effort to obtain a better view of the wild deer and the wildlife area, Plaintiff, MILTON OMAR COLON, came on to the publicly owned right-of-way and climbed Tower #1043, using its ladder system, to a point on the tower

between the lower and upper electric power lines. At that time, Plaintiff Colon was several feet away from Defendants' un-insulated power lines. These power lines are high-voltage electric power lines and carry energy through the lines, while simultaneously disbursing electricity in an invisible energy field around the various lines. These power lines appear to be insulated but are in fact not insulated, thus concealing their danger from Plaintiff.

65.     On March 17, 2011, Plaintiff, MILTON OMAR COLON, was startled by the sound of high-voltage electricity or shocked by electricity transmitting through the nearby lines owned and operated by Defendants, which resulted in an electrical charge in and around Plaintiff's body, which startled Plaintiff and caused Plaintiff to fall and come into contact with the lower level high-voltage electric power line, which is used, constructed, maintained, managed, operated and/or controlled by Defendants.

66.     On March 17, 2011, the power lines, poles, wires, fixtures and conduits attached to Tower #1043 were constructed, maintained, managed, operated, controlled and used by Defendants, METRO NORTH, and MTA to transmit high-voltage electricity.

67.     At all times material, the Defendants had the use, control and maintenance over Tower #1043 and its attached high-voltage electric power lines, such that Defendants are jointly and severally liable for the operation and control of the attached high-voltage, un-insulated, electric power lines and its high voltage electric transmission system.

### PLAINTIFFS' INJURIES AND DAMAGES

68.     As a direct and proximate result of the Defendants' dangerous activities and Defendants' breach of their duties, Plaintiff, OMAR COLON, has sustained serious bodily injuries, including but not limited to severe burns to most of his body, the amputation of both legs, external and internal physical injuries, which required extensive surgery and a lengthy

hospitalization, as well as continuing rehabilitation, along with a resulting physical injury to his nervous system, resulting in physical impairment, pain and suffering, and loss of enjoyment of life all of which result from Plaintiff's physical injuries. These injuries and damages are permanent and continuing in nature. However, Plaintiff is not claiming any damages relating to mental anguish, mental distress, mental injury, depression or mental anxiety, and Plaintiff is not claiming any damages for lost wages, lost earnings or loss of earning capacity.

69. As a direct and proximate result of the Defendants' activities and Defendants' breach of duties, Plaintiff, OMAR COLON, has sustained and suffered both economic and non-economic damages, including but not limited to, medical expense, hospitalization, rehabilitation expenses, nursing care, life care expenses, loss of services, prosthetics, medication, surgical procedures, pain management, permanent impairment, pain and suffering, loss of enjoyment of life and damage to his marital relationship, which have occurred in the past and will continue in the future.

70. As a direct and proximate result of the Defendants' dangerous activities and Defendants' breach of duties, Plaintiff, ARLENE DAVIS has suffered injury and damage to her marital relationship with her spouse, OMAR COLON. ARLENE DAVIS has suffered a loss of support and services, including the loss of household services, support and care previously provided by her spouse, OMAR COLON, which have occurred in the past and will continue to occur in the future.

### COUNT I
### Negligence and Negligence Per Se

Plaintiff, OMAR COLON, sues all of the Defendants, and states:

71. This is an action for damages which exceed twenty million dollars ($20,000,000.00).

72. Plaintiff realleges paragraphs 1 through 70 above, and are incorporated by reference herein.

73. At all times material, the Defendants were engaged in a joint business activity and a joint venture to use, manage, and maintain Tower #1043 and its attached high-voltage electric power lines, all of which are built on the publicly owned right-of-way which adjoins public walking and recreation areas.

74. At all times material, the Defendants had contracts and agreements under which Defendants constructed, inspected, controlled, used and maintained Tower #1043 and its attached high-voltage electric power lines, all of which are built on the right-of-way.

75. At all times material, Section 16-11-102(a) of the Regulations of Connecticut State Agencies provides that, **"Every utility shall use every effort to properly warn and protect the public from danger and shall exercise all possible care to reduce the hazard to which employees, customers and others may be subjected by reason of its equipment and facilities."** Section 16-11-102(a), et seq. is a regulation which was enacted or promulgated for the protection of the public, and the Defendants' violation of this regulation is negligence as a matter of law. Plaintiff is within the class of persons protected by Section 16-11-102(a), et seq. Under this section, Defendants had a foreseeable duty to protect Plaintiff, and Defendants breaches are negligence per se.

76. At all times material, Section 16-11-100(a) of the Regulations of Connecticut State Agencies provides in pertinent part that, **"utility" means a <u>railroad</u>, electric, telephone or telegraph company owning, leasing, maintaining, operating, managing or controlling...equipment in this state, but shall not include towns, cities, boroughs or any municipal corporation or department thereof, whether separately incorporated or not.** At

all times material, Defendants, METRO-NORTH and the MTA were required to **use every effort to properly warn and protect the public from danger and ...to... exercise all possible care to reduce the hazard to which employees, customers and others may be subjected by reason of its equipment and facilities."**

77.     A violation of Section 16-11-102(a) of the Regulations of Connecticut State Agencies, by Defendants is a violation of the applicable standard of care and the standard of care set forth in the above regulations. Defendants have violated Section 16-11-102(a) of the Regulations of Connecticut State Agencies, which is negligence and negligence per se. The Plaintiff's injuries which he suffered from the subject March 17, 2011 incident are of the type that Section 16-11-102(a), et seq. was intended to prevent. As a direct and proximate result of Defendants violation of Section 16-11-102(a), Plaintiff was injured. Plaintiff's injuries were reasonably foreseeable by Defendants, and Plaintiff's injuries were proximately caused by Defendants' violation of Section 16-11-102(a) and Defendants other breaches of duty.

78.     The above incident on Tower #1043 and Plaintiff's resulting injuries were caused by the carelessness, negligence and negligence per se of each and all of the Defendants, their servants, agents or employees in one or more of the following ways:

a.     Defendants failed to take reasonable steps to erect suitable barriers, shields or fences, and Defendants failed to prevent Plaintiff from being able to climb Tower #1043 or gain access to the right-of-way.

b.     Defendants failed to provide reasonable warning to the Plaintiff of the danger presented by Tower #1043 and Defendants failed to post readable "No Trespassing" signs.

c.     Defendants failed to provide reasonable warning to the Plaintiff of the danger presented by the invisible electrical energy field on Tower #1043.

d.      Defendants failed to take reasonable steps to either insulate the ladder system and metal platform on Tower #1043, or in the alternative, reasonably warn Plaintiff of the dangers presented by the ladder system metal platform in close proximity to the nearby energy fields.

e.      Defendants failed to provide reasonable warning to the Plaintiff of the danger presented by the un-insulated high-voltage electric power lines on Tower #1043.

f.      Defendants failed to reasonably repair and maintain the warning sign placed on Tower #1043, and failed to erect legible and readable warning signs in both directions.

g.      Defendants failed to comply with their duties under Section 16-11-102(a), et seq., by failing to properly and reasonably warn and protect Plaintiff and reduce the hazard to Plaintiff by reason of Defendants' equipment and facilities.

h.      Defendants failed to take reasonable steps to prevent members of the public and other persons from climbing and painting writing/graffiti on Tower #1043 and on nearby electrical towers and ladders, including failing to erect barriers and install ground level fences, and Defendants failed to control and prevent access to the right-of-way and Tower #1043, especially from an established foot path.

i.      All of the above warnings, precautions and protections were reasonable, available and inexpensive to implement, and Defendants were so aware and had notice, but failed and refused to take appropriate or reasonable precautions/protections and give appropriate and reasonable warnings, in violation of applicable safety regulations and State of Connecticut statutes, rules and regulations, and in violation of their duties under the Amended and Restated Service Agreement and industry standards and codes, as well as Defendants' own standards.

79.     On March 17, 2011, Plaintiff, MILTON OMAR COLON was severely injured on Tower #1043 when he suffered the injuries described above. At this time, Plaintiff walked on an

established foot path from the wildlife area directly to the railroad right of way and Tower #1043. At all times material, the danger and potential for injury to Plaintiff was foreseeable by Defendants. Because of Plaintiff's lack of experience and knowledge of high voltage electricity, Plaintiff, OMAR COLON, could <u>not</u> appreciate the high voltage danger presented by Tower #1043, its ladder system and its attached high voltage electric transmission lines, energy fields, un-insulated wires and the potential for electric arc/shock

80.     Plaintiff, OMAR COLON's injuries were caused and due to the negligence and negligence per se of the Defendants and their failure to take reasonable precautions/protections and provide reasonable warning to the Plaintiff as set forth above. Because    of    Defendants' special knowledge of high voltage electricity and its danger, Defendants were under a heightened duty to protect and warn Plaintiff, but Defendants failed to do so.

81.     As a result of the above incident on Tower #1043 and the Defendants negligence and negligence per se, the Plaintiff, MILTON OMAR COLON has suffered severe and permanent physical injuries including but not limited to:

a.     Severe burns on most of Plaintiff's body;

b.     The amputation of both legs;

c.     Significant scarring to most of the Plaintiff's body below the neck;

d.     Numbness and pain at scar sites;

e.     Phantom pain at amputated stumps;

f.     physical injury and physical impairment of bodily functions;

g.     Internal organ and body system damage;

h.     Numerous other injuries;

i.     Pain and suffering from physical injuries; and

j.    Loss of enjoyment of life from physical injuries.

82.    The above incident on Tower #1043 and Plaintiff's resulting physical injuries were caused by the carelessness and negligence and negligence per se of each and all of the Defendants, their servants, agents or employees.

83.    The Defendants' knew of the above-described dangerous conditions or had the Defendants exercised due care and proper diligence, Defendants should have known of the above-described dangerous conditions, but failed to properly warn and protect Plaintiff, which is negligence and negligence per se. At all times material, the conditions which existed on Tower #1043 and its adjoining right-of-way, with uncontrolled access, constituted a violation of Section 16-11-102(a), and Defendants had actual or constructive notice of these conditions and violations, but Defendants failed to protect and warn Plaintiff.

84.    The Defendants' knew of the above-described failure to warn Plaintiff and failure to post readable "No Trespassing" signs; or had the Defendants exercised due care and proper diligence, Defendants should have known of the above-described failure to warn Plaintiff, which is negligence and negligence per se. At all times material, Defendants had a duty to maintain Tower #1043 and its adjoining right-of-way in a safe condition, and Defendants were under a duty to control and prevent uncontrolled access to Tower #1043 and its adjoining right-of-way. At all times material, Defendants duty to Plaintiff was a foreseeable duty, and Defendants voluntarily accepted this duty, but Defendants violated this duty, which is negligence and negligence per se.

85.    The Defendants' knew of the above-described failure to control access and erect barriers to Tower #1043 or had the Defendants exercised due care and proper diligence,

Defendants should have known of the above-described failures, which is negligence and negligence per se.

86. The Defendants' knew of the above-described failure to warn Plaintiff or had the Defendants exercised due care and proper diligence, Defendants should have known of the above-described failure to warn Plaintiff, which is negligence and negligence per se.

87. As a direct and proximate result of the carelessness and negligence and negligence per se of the Defendants, the Plaintiff has sustained and continues to sustain injuries, loss and great physical pain and suffering.

88. As a direct and proximate result of the carelessness and negligence and negligence per se of the Defendants, the Plaintiff has sustained and continues to sustain severe physical injury, and as a result has been deprived of enjoying his life's activities.

89. As a direct and proximate result of the carelessness and negligence and negligence per se of the Defendants, the Plaintiff has sustained and continues to sustain substantial economic loss. However, Plaintiff does not claim any damages for mental distress, mental anguish, mental injury, depression or anxiety, and Plaintiff does not claim any lost wages, loss of earnings or loss of earning capacity.

90. As a direct and proximate result of the carelessness and negligence and negligence per se of the Defendants, the Plaintiff has been required to undergo medical and hospital treatment for his physical injuries.

91. As a direct and proximate result of the carelessness and negligence and negligence per se of the Defendants, the Plaintiff will continue to require medical attention and treatment for his physical injuries, and Plaintiff will be required to pay for the costs thereof.

## COUNT II
## Willful, Wanton and Reckless Misconduct

Plaintiff, OMAR COLON, sues all of the Defendants, and states:

92.     This is an action for damages which exceed twenty million dollars ($20,000,000.00).

93.     Plaintiff realleges paragraphs 1 through 70 above, and 73 through 91 above, which are incorporated by reference herein.

94.     At all times material, all of the Defendants were engaged in a joint business activity and a joint venture to use, manage, and maintain Tower #1043 and its attached high-voltage electric power lines, all of which are built on the publicly owned right-of-way which adjoin public walking and recreation areas and is used by the Defendants.

95.     At all times material, the Defendants had contracts and agreements under which they used, and maintained Tower #1043, its ladder system, and controlled its attached un-insulated high-voltage electric power lines, all of which are built on the publicly owned right-of-way.

96.     On March 17, 2011, Plaintiff, MILTON OMAR COLON was severely injured on Tower #1043 and on Defendants' high-voltage power lines, when Plaintiff suffered the injuries described above.

97.     Plaintiff, OMAR COLON's injuries were caused and due to the willful, wanton and recklessness conduct of the Defendants and their willful, wanton and reckless refusal and failure to take reasonable precautions and provide reasonable warning to the Plaintiff as set forth above, under circumstances where the Defendants were aware of the need for such precautions and warnings and such precautions and warnings were reasonably available.

98.    As a direct and proximate result of the Defendants' willful, wanton and reckless misconduct, causing the above incident on Tower #1043 and on Defendant's high-voltage power lines, the Plaintiff, MILTON OMAR COLON has suffered severe and permanent injuries as set forth above.

99.    The above incident on Tower #1043 and Plaintiff's resulting injuries were caused by and due to the willful, wanton and reckless conduct of each and all of the Defendants, their servants, agents or employees, in one or more of the following ways, and that such violation was a substantial factor in causing the injuries to Plaintiff:

a.    Defendants failed to take reasonable steps to control access to the right-of-way and Tower #1043, and Defendants failed to erect effective barriers, effective shields, ground level fences and to prevent Plaintiff from being able to climb Tower #1043 and its ladder system, in violation of applicable safety regulations and State of Connecticut rules and regulations, and in violation of industry standards and their duties under the Amended and Restated Service Agreement.

b.    Defendants failed to provide reasonable warning to the Plaintiff of the danger presented by Tower #1043 and failed to post readable "No Trespassing" signs, in violation of applicable safety regulations and State of Connecticut statutes, rules and regulations, and in violation of their duties under industry standards and the Amended and Restated Service Agreement.

c.    Defendants failed to provide reasonable warning to the Plaintiff of the danger presented by the invisible electrical energy field on Tower #1043, in violation of applicable safety regulations and State of Connecticut statutes, rules and regulations, and in violation of their duties under the Amended and Restated Service Agreement.

d.    Defendants failed to take reasonable steps to either insulate the ladder system and the metal platform on Tower #1043, or in the alternative, specifically warn Plaintiff of the dangers presented by the metal platform in close proximity to the nearby energy fields, in violation of applicable safety regulations and State of Connecticut statutes, rules and regulations, and in violation of their duties under industry standards and the Amended and Restated Service Agreement.

e.    Defendants failed to provide reasonable warning to the Plaintiff of the danger presented by the underlined uninsulated high-voltage electric power lines on Tower #1043, in violation of applicable safety regulations and State of Connecticut statutes, rules and regulations, and in violation of their duties under the Amended and Restated Service Agreement.

f.    Defendants failed to take reasonable steps to repair and maintain the warning sign placed on Tower #1043 and failed to erect legible and readable warning signs and "No Trespassing" signs in both directions, in violation of applicable safety regulations and State of Connecticut statutes, rules and regulations, and in violation of their duties under industry standards and the Amended and Restated Service Agreement.

g.    Defendants failed to comply with their duties under Section 16-11-102(a) et. seq., by failing to properly and reasonably warn and protect Plaintiff and reduce the hazard to Plaintiff by reason of Defendants' equipment and facilities, in violation of applicable safety regulations and State of Connecticut statutes, rules and regulations, and in violation of their duties under the Amended and Restated Service Agreement.

h.    Defendants failed to take reasonable steps to prevent members of the public and other persons from gaining access to the right-of-way and Tower #1043 and from climbing and painting, writing/graffiti on nearby electrical towers and ladders and other public structures, in

violation of applicable safety regulations and State of Connecticut statutes, rules and regulations, and in violation of their duties under the Amended and Restated Service Agreement.

i.  All of the above precautions and steps were reasonable, available and inexpensive to implement, and Defendants were so aware and had notice, but failed and refused to take appropriate or reasonable precautions and give appropriate and reasonable warnings, in violation of applicable safety regulations and State of Connecticut statutes, rules and regulations, and in violation of their duties under the Amended and Restated Service Agreement and industry standards and codes.

100.  The Defendants' knew of the above-described dangerous conditions or had the Defendants exercised due care and proper diligence, Defendants should have known of the above-described dangerous conditions.

101.  The Defendants' knew of the above-described failure to warn Plaintiff or had the Defendants exercised due care and proper diligence, Defendants should have known of the above-described failure to warn Plaintiff.

102.  As a direct and proximate result of the willful, wanton and reckless conduct of the Defendants, the Plaintiff has sustained and continues to sustain great physical pain and suffering.

103.  As a direct and proximate result of the willful, wanton and reckless conduct of the Defendants, the Plaintiff has sustained and continues to sustain severe injury, disability, and has been deprived of enjoying his life's activities, including but not limited to:

a.  Severe burns on most of Plaintiff's body;

b.  The amputation of both legs;

c.  Significant scarring to most of the Plaintiff's body below the neck;

d.  Numbness and pain at scar sites;

e.    Phantom pain at amputated stumps;

f.    Physical injury and physical impairment of important bodily functions;

g.    Internal organ and body system damage;

h.    Numerous other physical injuries;

i.    Pain and suffering from physical injuries; and

j.    Loss of enjoyment of life from physical injuries.

104.    As a direct and proximate result of the willful, wanton and reckless conduct of the Defendants, the Plaintiff has sustained and continues to sustain great physical pain and mental anguish.

105.    As a direct and proximate result of the willful, wanton and reckless conduct of the Defendants, the Plaintiff has become sick, sore, and disabled, and has become deprived of enjoying life's activities.

106.    As a direct and proximate result of the willful, wanton and reckless conduct of the Defendants, the Plaintiff has sustained and continues to sustain substantial economic loss. **However, Plaintiff does not claim any damages for mental distress, mental anguish, mental injury, depression or anxiety, and Plaintiff does not claim any lost wages, loss of earnings and/or loss of earning capacity.**

107.    As a direct and proximate result of the willful, wanton and reckless conduct of the Defendants, the Plaintiff has been required to undergo medical and hospital treatment for his injuries, and has sustained and continues to sustain substantial economic loss, including but not limited to expenses for medical care, hospital care, pain management, nursing care, and continuing therapy.

108.     As a direct and proximate result of the willful, wanton and reckless conduct of the Defendants, the Plaintiff will continue to require medical attention and treatment for his injuries, and Plaintiff will be required to pay for the costs thereof.

### COUNT III
### Loss of Consortium

Plaintiff, ARLENE DAVIS, sues all of the Defendants for damages, and states:

109.     This is an action for damages which exceed twenty million dollars ($20,000,000.00).

110.     Plaintiff realleges paragraphs 1 through 70 and 73 through 91 and 100 through 101 above, and are incorporated by reference herein.

111.     At all times material, all of the Defendants were engaged in a joint business activity and a joint venture to use, manage, and maintain the public-owned Tower #1043 and its attached high-voltage electric power lines, all of which are built on the publicly owned right-of-way which is used by the Defendants.

112.     At all times material, the Defendants had contracts and agreements under which they constructed, used and maintained Tower #1043 and its attached un-insulated high-voltage electric power lines, all of which are built on the publicly owned right-of-way which is used by the Defendants.

113.     On March 17, 2011, Plaintiff, MILTON OMAR COLON was severely injured on Defendants' Tower #1043 when he came into contact with Defendants' high-voltage, un-insulated electric wires and suffered the injuries described above.

114.     At the time of the incident described above, and at all times material to this cause of action, Plaintiff, ARLENE DAVIS, was the lawful spouse of Plaintiff, OMAR COLON.

115. By reason of the aforesaid negligence of all of the Defendants, Plaintiff, ARLENE DAVIS has been deprived of OMAR COLON's society, companionship, consortium, support, assistance and services in and about the home, and she will continue to be deprived thereof in the future.

116. The losses described above are either permanent or continuing, and Plaintiff, ARLENE DAVIS, will suffer these losses in the future.

## Count I

WHEREFORE, as to COUNT I, the Plaintiff, Omar Colon demands a trial by jury of all issues raised in this Complaint, and Plaintiff claims:

1. Damages
2. Interest
3, Costs

## Count II

WHEREFORE, as to COUNT II, the Plaintiff, Omar Colon demands a trial by jury of all issues raised in this Complaint, and Plaintiff claims:

1. Damages
2. Interest
3. Costs
4. Attorneys Fees
5. Punitive Damages

## Count III

WHEREFORE, as to Count V, Plaintiff, ARLENE DAVIS, demands judgment against all of the Defendants, and Plaintiff demands a trial by jury of all issues so triable, and Plaintiff claims:

1. Damages
2. Interest
3. Costs

Dated this 10th day of April, 2014.

FOR THE PLAINTIFFS
OMAR COLON, AND ARLENE DAVIS

JOWDY & JOWDY and
WOODLIEF & RUSH, P.A.

By: _Brian P. Rush_____

BRIAN P. RUSH, ESQUIRE (ct29098)
Florida Bar No. 359203
3411 W. Fletcher Avenue, Suite B
Tampa, Florida 33618
(813) 963-1586 (Telephone)
(813) 265-2041 (Facsimile)
bpr.tampa@verizon.net

JOHN JOWDY, ESQUIRE
67 West Street
Danbury, CT 06810
(800) 787-0241 (Toll Free)
(203) 792-1677 (Telephone)
(203) 778-8329 (Facsimile)
johnjowdy@jowdylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing including the Attorneys listed below. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Brian P. Rush, Esquire

**Beck S. Fineman**
Ryan Ryan Deluca, LLP
707 Summer Street
Stamford, CT 06901
203-357-9200
Fax: 203-357-7915
Email: bsfineman@ryandelucalaw.com

**Charles A. Deluca**
Ryan Ryan Deluca, LLP
707 Summer Street
Stamford, CT 06901
203-357-9200
Fax: 203-357-7915
Email: cdeluca@ryandelucalaw.com

**Robert O. Hickey**
707 Summer Street
Stamford, CT 06901
203-357-9200
Fax: 203-778-8329
Email: rohickey@ryandelucalaw.com

**Charles P. Reed**
Loughlin Fitzgerald, P.C.-Wallingford
150 South Main Street
Wallingford, CT 06492
203-269-3487
Email: creed@lflaw.com

**W. Glen Pierson**
Loughlin Fitzgerald, P.C.- Wallingford
150 South Main Street
Wallingford, CT 06492
203-265-2035
Fax: 203-269-3487
Email: gpierson@lflaw.com

**John Jowdy**
67 West Street
Danburry, CT 06810
203-792-1677
Fax: 203-357-7915
Email:johnjowdy@jowdylaw.com