UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MILTON OMAR COLON and ARLENE
DAVIS,
    *Plaintiffs*,

    v.

METRO-NORTH COMMUTER
RAILROAD COMPANY, and
METROPOLITAN TRANSPORTATION
AUTHORITY,
    *Defendants*,

    v.

UNITED ILLUMINATING COMPANY,
*Third-Party Defendant*.

No. 3:13-cv-00325 (JAM)

**RULING DENYING MOTION IN LIMINE TO PRECLUDE ANY EXPERT TESTIMONY THAT U.I.'S TRANSMISSION SYSTEM CAUSED A SENSATION IN MR. COLON AND/OR THAT IT DIRECTLY OR INDIRECTLY CAUSED HIS FALL**

The United Illuminating Company ("UI"), the third-party defendant in this case, has filed a motion *in limine* to preclude any expert testimony that UI's transmission system caused a sensation in Mr. Colon and/or that it directly or indirectly caused his fall. *See* Doc. #316. I will deny the motion to the extent that it would preclude the expert testimony of Dr. Elliot Stern with respect to matters that are within the scope of his reports and deposition testimony in this matter concerning the potential causal and contributory role of UI's wires.

**BACKGROUND**

Plaintiff Omar Colon suffered severe electrocution injuries after he climbed up a catenary pole along the electrified Metro-North railroad tracks in Connecticut. The factual background of this case of has been described in detail in the Court's ruling on motions for summary judgment.

1

*See Colon v. Metro-N. Commuter R.R. Co.*, -- F. Supp. 3d --, 2017 WL 987844 (D. Conn. 2017). For present purposes, the key facts as claimed by plaintiffs are (1) that Colon climbed high up a catenary tower along the Metro-North railroad tracks; (2) that the catenary tower carried not only Metro-North's electric lines at a lower level but also UI's higher-voltage electric lines at a higher level; (3) that Colon allegedly lost his balance as a result of some kind of surprise static, corona, or arc electrical shock sensation at a time when he was not physically touching but was closer to the Metro-North wires than the UI wires; and (4) that this initial shock/sensation led to Colon falling down onto Metro-North's wires and to him suffering severe electrocution and burns before he could be rescued.

Plaintiffs Omar Colon and Arlene Davis have filed this lawsuit against defendants Metro North Commuter Railroad Company ("Metro-North") and the Metropolitan Transportation Authority ("MTA"). The defendants in turn have filed a third-party complaint for contractual indemnification against UI.

On January 30, 2015, as part of the discovery process, plaintiffs filed an expert disclosure listing and designating their planned expert witnesses. Doc. #316-2. This disclosure listed Elliot Stern, Ph.D., a forensic engineer, and stated that Dr. Stern would testify, among other things, to "an accident reconstruction of the subject March 17 incident in which the Plaintiff was injured and the manner in which Plaintiff was shocked and fell on the power lines/signal wires," and "in regard to electricity and high-voltage arc/static shock and regarding the propensity of high-voltage lines to energize air structures and conductors (including humans) nearby or connected to Defendant's high-voltage lines." *Id*. at 3-4.

On February 25, 2015, Dr. Stern filed his expert report, containing his reconstruction of the accident. The report concluded that, based on Colon's account of the incident, he had been

"quite close to the bridle wire for the U.I. 115 kV conductor as well as immediately adjacent to the Metro-North 13.2kV line and insulators." Doc. #316-3 at 4. The report concluded that the direct cause of the accident was Colon's "exposure to high-voltage energy lines without effective hazard control." *Id*. at 5. Dr. Stern later sat for a deposition, at which he was questioned by lawyers representing Metro-North, the MTA, and UI. At that deposition, Dr. Stern stated that, while he had not done precise calculations on the matter, it was "more likely than not" that the shock would have been caused by the higher voltage line, *i.e.* UI's wires. Doc. #316-4 at 6-7, 9.

In anticipation of trial, UI moved *in limine* to exclude "any expert evidence that UI's transmission system caused a sensation in Mr. Colon and/or that it directly or indirectly caused his fall," on the grounds that any such testimony had not been properly disclosed as required by Rules 26(a)(2) and 37(c)(1). Doc. #316 at 1, 6-7. UI also claims that Dr. Stern's opinions concerning whose wires caused the accident are inadmissible because they are impermissibly speculative. *Id*. at 11-13.

## DISCUSSION

### *The Expert Disclosure Rules*

Federal Rule of Civil Procedure 26(a)(2)(A) states that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705," the rules governing expert testimony. Any witness "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony" must also provide a written report to be included in this disclosure. Fed. R. Civ. P. 26(a)(2)(B). These requirements are enforced by Rule 37(c)(1), which states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

3

supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."

UI correctly notes that, under Rules 26(a)(2) and 37(c)(1), courts will not permit experts to testify to matters beyond the scope of their expert disclosure. *See generally* 8A Fed. Prac. & Proc. Civ. § 2031.1 (3d ed.) ("One particular problem has arisen when experts seek to offer new information or theories not included in their reports, even assuming those were adequate when initially served. Rule 37(c)(1) calls for exclusion of information that should have been revealed but was not. Courts have frequently excluded proffered expert testimony under this rule, most often in connection with trial, but also on motions for summary judgment.")

Here it is clear to me that Dr. Stern's opinions regarding the possibility that UI's wires caused plaintiff Colon's accident were within the scope of his disclosure and adequately disclosed. The initial expert disclosure filed by plaintiffs stated that he would testify to a reconstruction of the accident. His expert report contained this reconstruction, and included his opinion regarding Colon's position with respect to both UI's and Metro-North's wires, as well as his conclusion that the direct cause of the accident was Colon's exposure to "high-voltage energy *lines*," plural. Doc. #316-3 at 5 (emphasis added). I think these disclosures put UI on notice that Dr. Stern could testify that UI's wires had played some causal role in the accident, as UI's counsel then questioned him about that topic at his deposition. Doc. #316-4 at 6-11.

It is true that Dr. Stern's report (as distinct from his later deposition) did not offer a further explicit conclusion that it was more likely than not that it was UI's wires that led to the initial electric shock. This assessment of a probability that it was UI's wires emerged only during Dr. Stern's deposition. I conclude that Dr. Stern may permissibly address on questioning by Metro-North and the MTA what potential role he believes UI's wires had in creating the initial

4

electric shock because it would not otherwise be possible for Metro-North and the MTA to challenge Dr. Stern's testimony and for Dr. Stern to explain and substantiate his overall conclusions that Colon was subject to some form of static or arc electric shock if he is unable to comment upon the individual contributory components. Dr. Stern's conclusions concerning UI's wires are within the necessary scope of his report and conclusions, and I conclude that UI has received adequate notice of Dr. Stern's conclusions.

It is true that defendants Metro-North and MTA themselves made no expert disclosures in this case, and therefore according to the terms of Rule 37 should not be allowed to "use" Dr. Stern's testimony at all. But Dr. Stern's testimony concerning the role played by UI's wires is not just relevant to defendants' third-party claims against UI. It is also directly relevant to plaintiffs' own claims against Metro-North and MTA. In order to prove their claims, after all, plaintiffs must establish that Colon was in fact struck by some kind of electric shock when he climbed up the catenary tower. If on the other hand he simply bumped his head on a beam, or lost his balance, or deliberately jumped off the tower, he would not be entitled to recover. And for the purposes of plaintiff's claim against Metro-North and the MTA, it does not matter which set of wires caused the shock, only that the wires as a whole did cause a shock. Therefore, any evidence tending to show that *either* or *both* sets of wires caused an electric shock that struck plaintiff while he was up the tower is highly probative to plaintiff's case. Plaintiff is certainly entitled to use Dr. Stern's testimony on this matter, which was properly disclosed under Rule 26(a)(2), against defendants. And defendants Metro-North and MTA in turn are entitled to defend against these allegations by probing Dr. Stern's testimony. This is not "using" the testimony of an expert they did not disclose, but rather attempting to prevent an opposing party from making effective use of that expert against them.

5

Accordingly, the Court will not prevent testimony from Dr. Stern about how the wires or a combination of all the wires may have caused or contributed to plaintiff's injuries. Defendants Metro-North and MTA may then cross-examine Dr. Stern on any matter within the scope of his report and his deposition testimony, including any of Dr. Stern's views concerning the likelihood or probability that UI's wires caused any electric shock of plaintiff.

### *The Admissibility of Dr. Stern's Opinions*

UI also argues that, even if Dr. Stern's testimony should not be barred under Rule 37(c)(1), it is inadmissible under Federal Rule of Evidence 702 because it is mere speculation. Doc. #316 at 11-13. This argument, I think, misapprehends what is meant by the rule against "speculative or conjectural" expert opinions. *See, e.g., Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). This principle does not, and hardly could, require that any opinion given by an expert at trial be given with complete confidence, or that every expert express complete certainty about what happened in a given case. Such certainty, indeed, may often rightly be considered a sign of non-rigorous, unscientific thinking. *See, e.g.*, Nate Silver, *The Signal and the Noise: Why So Many Predictions Fail—But Some Don't* 73 (Paperback ed., 2015) ("You will need to learn how to express—and quantify—the uncertainty in your predictions. . . . The more willing you are to do these things, the more capable you will be of evaluating a wide variety of information without abusing it.").

Rather, the focus of the rules governing expert testimony is "solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 595 (1993). In other words, it is perfectly acceptable for an expert to conclude, based on sound scientific principles and methods, that X is more likely to have happened than Y, but that he cannot be certain. Certainly in a civil action where the

plaintiffs need only prove their case by a preponderance of the evidence, *i.e.* show that their account of the facts is more likely than not to be true, it would be anomalous to exclude an expert's testimony that a certain factual account is more likely true than not simply because they could not be more certain. A frank acknowledgement of this uncertainty may even provide reassurance that the expert has stayed within the realm of sound inference and has not taken unfounded speculative leaps.

That is precisely what we have in this case. Dr. Stern testified that "because of the field effects and potential discharge and charging of the air is related to voltage, there is a higher likelihood that the higher voltage line would generate more of an effect." Doc. #316-4 at 9. This was based on his reconstruction of the physical relationship among Colon and the various sets of wires, as best he could determine from Colon's imprecise account of the incident. *Id*. at 8-9. In context, Dr. Stern's negative responses to UI's questions asking him whether he could state this or that with "reasonable scientific certainty," *id*. at 6-9, are most naturally read as statements that he cannot be certain which set of wires caused the electric shock, not as an admission that his opinion did not rest on sound, certain scientific principles. I see no reason why an opinion applying "the general physical characteristics of voltage," *id*. at 9, to plaintiff's somewhat hazy account of the incident to generate a rough probability as to the cause of the accident should be excluded from evidence.

## Conclusion

For the foregoing reasons, UI's motion *in limine* (Doc. #316) is DENIED. Dr. Stern will be permitted to testify concerning his opinions about what caused any electrical shock to plaintiff Colon, including his views concerning the likelihood or probability that UI's wires caused or contributed to any electric shock/sensation experienced by Colon.

It is so ordered.

Dated at New Haven this 9th day of August 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge