UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MILTON OMAR COLON and ARLENE DAVIS,<br>  *Plaintiffs*,<br><br>v.<br><br>METRO-NORTH COMMUTER RAILROAD COMPANY, and METROPOLITAN TRANSPORTATION AUTHORITY,<br>  *Defendants*. | |
| METRO-NORTH COMMUTER RAILROAD COMPANY and METROPOLITAN TRANSPORTATION AUTHORITY,<br>  *Third-Party Plaintiffs*,<br><br>v.<br><br>UNITED ILLUMINATING COMPANY,<br>  *Third-Party Defendant*. | No. 3:13-cv-00325 (JAM) |

**RULING DENYING PLAINTIFFS' MOTION FOR NEW TRIAL**

Plaintiffs move for a new trial pursuant to Fed. R. Civ. P. 59. I will deny their motion for the reasons set forth below.

**BACKGROUND**

On March 17, 2011, emergency responders were called to the scene of a catenary tower along the railroad tracks in New Haven, Connecticut. About 40 feet above them was a man—plaintiff Omar Colon—hanging upside down from the tower in a horribly helpless predicament. Colon was dangling by just one leg from one of the tower's cross bars, with his body swinging into uncontrollable and agonizingly painful contact with a high-voltage electric line next to him.

1

The emergency responders miraculously rescued Colon that day but he suffered catastrophic burn injuries leading to months of hospitalization, dozens of surgeries, and the loss of both his legs.

Colon and his wife Arlene Davis ended up filing this federal diversity lawsuit for negligence against defendant Metro-North Commuter Railroad Company ("Metro-North") and the Metropolitan Transportation Authority ("MTA"). Colon did not dispute at trial that he was a trespasser on railroad property. Nor did he dispute that he knew in general of the dangers of railroad tracks and the dangers if he were to touch any of the electric wires that run above the tracks. Colon's claim depended instead on his proving that he was injured because of a *hidden* danger on the railroad property. His claim was that he was injured because the railroad did not warn him about a hidden danger from invisible static electricity that persists in the air near high-voltage wires.

According to Colon, here is what happened that day. He wandered into some wetlands next to the railroad tracks and saw a herd of deer. To get a better view of the deer he decided to climb up the readily climbable lattice-work bars of the catenary tower. There were no legible warning signs at the base of the tower. As he approached the upper reaches of the tower and within just a few feet of high-voltage wires that ran immediately above and below him, Colon allegedly felt a strange sensation on his skin consistent with invisible static electricity. This somehow caused him to lose his footing and to fall upside down into the position where emergency responders would find and rescue him. Defendants disputed Colon's account at trial, challenging Colon's memory of what happened and his claim that it was static electricity that caused him to lose his balance and fall.

After a two-week trial in August 2017, the jury found against plaintiffs. I told the jury it must consider whether the railroad could be liable under a so-called "constant intrusion" theory of liability in accordance with Section 335 of the Restatement (Second) of Torts and the Connecticut Supreme Court's decision in *Maffucci v. Royal Park Ltd. P'ship*, 243 Conn. 552, 559–60 (1998). As I have discussed at length in a prior ruling, this theory of liability holds that a property owner must reasonably warn even a trespasser like Colon of any serious hidden dangers on the property if the property owner was aware of prior constant trespasses or intrusion on a limited area of the property where the hidden danger exists. *See Colon v. Metro-N. Commuter R.R. Co.*, 242 F. Supp. 3d. 65, 72-73 (D. Conn. 2017).[1]

I told the jury that plaintiffs must prove the following five elements to sustain their claim for "constant intrusion" liability:

(1) *Possessor of the Property.* That on March 17, 2011, Metro-North was a possessor of the property where Mr. Colon was injured (*i.e.*, it owned, managed, or otherwise controlled the property);

(2) *Injury Caused by a Serious Hidden Danger.* That on March 17, 2011, Mr. Colon suffered injuries that were caused by an artificial condition on the property (a) that Metro-North created or maintained or maintained access to; (b) that Metro-North knew was likely to cause death or serious bodily harm if encountered by a trespasser; and (c) that presented a hidden danger that Metro-North had reason to believe such trespassers would not realize or discover;

(3) *Knowledge of Prior Constant Intrusion into Limited Area.* That on March 17, 2011, Metro-North knew, or from facts within its knowledge should have known, that trespassers had constantly intruded upon the limited area of the property that was in dangerous proximity to where the hidden danger existed that caused Mr. Colon's injuries;

(4) *Failure to Reasonably Warn.* That Metro-North failed to use reasonable care to warn Mr. Colon of the hidden danger and the risk involved; and

---

[1] Although my earlier summary judgment ruling allowed two other theories of liability under Sections 337 and 339 of the Restatement to proceed, I ultimately did not instruct the jury in light of the trial evidence on those theories, and plaintiff's post-trial motion does not further challenge my decision not to do so.

> (5) *Injury Caused Because of Failure to Reasonably Warn.* That Metro-North's failure to use reasonable care to warn caused Mr. Colon's injuries.

Doc. #496 at 7-8 (quoting jury instructions).

I also asked the jury to answer special interrogatories for each one of these five elements. The jury concluded that plaintiffs failed to prove three of them. Although the jury concluded that plaintiffs proved that Metro-North possessed the property (Element #1) and that Metro-North failed to reasonably warn trespassers like Colon of the hidden dangers of climbing the tower near the high-voltage lines (Element #4), the jury decided that plaintiffs failed to prove that Colon's injury was caused by any hidden danger from static electricity (Element #2), that plaintiffs failed to prove that Metro-North knew of prior trespasses in dangerous proximity to the hidden danger of static electricity (Element #3), and that plaintiffs failed to prove Colon's injury was the result of Metro-North's failure to warn (*e.g.*, that Colon would not have climbed the tower as he did if Metro-North had had a proper warning sign).

## DISCUSSION

Plaintiffs now move for a new trial. Rule 59(a) of the Federal Rules of Civil Procedure allows the grant a new trial after a jury verdict "for any reason for which a new trial has heretofore been granted in an action at law in federal court." When considering a motion for a new trial under Rule 59(a), the Court gives a high degree of deference to the jury's evaluation of witness credibility in light of the principle that jury verdicts should only rarely be overturned. *See ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97-98 (2d Cir. 2014). The Court may not disturb the jury's verdict unless convinced that the jury reached a seriously erroneous result or that its verdict was otherwise a miscarriage of justice. *See Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 202 (2d Cir. 2014). I will consider each of plaintiffs' arguments in turn.

4

### 1. Challenge to Jury Instruction re Dangerous Proximity

Plaintiffs argue that I wrongly instructed the jury that defendants must have known of prior constant intrusion in dangerous proximity to the high-voltage wires, as distinct from knowing merely that there there had been constant intrusions around the base of the tower structure some 40 feet below where Colon was injured. According to plaintiffs, § 335 of the Restatement does not use the term "dangerous proximity," and the Connecticut Supreme Court's decision in *Maffucci* requires only that there be a constant intrusion on the structure where an injury occurs.

I agree that § 335 does not use the term "dangerous proximity." But § 335 requires that the relevant trespass be on a "limited area" of the property, and it is clear to me that some consideration of dangerous proximity must inform the determination of what constitutes the relevant "limited area." The whole point of liability under § 335 is to hold property owners liable if they know of trespasser intrusion into areas of their property near where hidden dangers lie. Section 335 does not impose liability on a property owner if all that the property owner knows is that there has been frequent trespass on parts of the property distant from where any hidden danger lies.

Plaintiffs' argument that the entire tower structure should be the "limited area" for purposes of liability under § 335 ignores that there was no hidden danger to trespassers from static electricity at the bottom of the tower. Any hidden danger from static electricity was 40 feet or so high up the structure, and it was this limited area of the property that was properly made the jury's focus at trial.[2]

---

[2] The Court at trial allowed evidence of prior known trespasses on other parts of railroad property near the tower at issue, such that plaintiffs were free to argue that these ground-level trespasses were circumstantial evidence of additional trespasses in dangerous proximity to the high-voltage wires. The trial evidence also included graffiti on one nearby tower considerably higher than ground level.

This is not inconsistent with the Connecticut Supreme Court's decision in *Maffucci*, which involved danger from electricity in a ground-level cabinet box structure, not a large tower structure as in this case. Moreover, *Maffucci* cited and quoted with approval a decision of the First Circuit, noting that it had concluded that "in order to establish constructive knowledge [of constant intrusion by trespassers], the defendant must have 'actual knowledge of people coming *within dangerous proximity* to the wires—meaning not merely the presence of people in the area on the ground, but people either climbing the pole or otherwise placing themselves in a position near the wires so as to endanger their safety.'" *Maffucci*, 243 Conn. at 561 (quoting *Bennett v. Public Service Co. of New Hampshire*, 542 F.2d 92, 97 (1st Cir. 1976)) (emphasis added). My instruction concerning the "dangerous proximity" requirement was fully consistent with the use of that very term in *Maffucci*.

In any event, even assuming any error with respect to the "dangerous proximity" instruction, it was surely harmless, because it concerned only one of the five required elements (Element #3), and the jury found that plaintiffs failed to show two more of the elements: that Colon's injury was caused by a hidden danger (Element #2) and that Colon's injury was caused by the failure to reasonably warn (Element #5).[3] Accordingly, I conclude that there was no error

---

[3] In an apparent effort to show that any error was not harmless, plaintiffs argue that defendants' Rule 30(b)(6) corporate representative witnesses allegedly admitted during their depositions (which were introduced by plaintiffs at trial) to knowledge of prior trespasses and that static electricity is a hidden danger. Defendants, however, disputed plaintiffs' interpretation of this testimony, and it is clear to me that plaintiffs overstate the legal weight that a jury must give to Rule 30(b)(6) testimony. *See, e.g.*, *A & E Prod. Grp., L.P. v. Mainetti USA Inc.*, 2004 WL 345841, at *7 (S.D.N.Y. 2004) (explaining that Rule 30(b)(6) testimony does not operate as a "judicial admission" but "may be explained or contradicted" like any other prior statement or testimony of a party or witness at trial). In any event, even assuming that the jury were compelled to credit plaintiffs' interpretation of the Rule 30(b)(6) testimony, any possible error would still be harmless because none of the Rule 30(b)(6) testimony addressed whether it was static electricity that actually prompted Colon to lose his balance on the tower (Element #2), much less whether the railroad's failure to warn Colon would have made any difference to Colon's foolhardy decision to climb the tower (Element #5).

with respect to the jury instruction as to the "dangerous proximity" requirement and that any possible error was harmless.

### 2. Exclusion of Federal Railroad Administration Casualty Reports

Plaintiffs object to my decision to preclude evidence of reports by the Federal Railroad Administration concerning other shock/burn incidents along the railroad's right of way. I have previously ruled at length on this issue (Doc. #439), and plaintiffs' offer no additional reason for me to second-guess my prior ruling. In any event, because these casualty reports were at best relevant solely to the issue of prior constant intrusion (Element #3), any possible error from the exclusion of this evidence at trial was harmless because of plaintiffs' failure to prove two other elements of their claim (Elements #2 and #5).

### 3. Cross-Examination re Copper Theft

Plaintiffs argue for a new trial on grounds that defense counsel improperly cross-examined co-plaintiff Arlene Davis about Colon's prior arrest for theft of copper at her apartment complex. Although this cross examination was clearly relevant for the reasons described in defendants' briefing (Doc. #517 at 8-9), I precluded it because of the possibility that there might be unfair prejudice, especially if the jury were to speculate that Colon's true reason for climbing the catenary tower may have been in order to steal copper from its electrical components. Doc. #487 at 43-44.

Although plaintiffs falsely claim that this cross-examination "came in over Plaintiffs' objection and request for in [sic] curative instruction, which the Court refused to give" (Doc. #512 at 3), the record shows that I *sua sponte* interrupted the cross-examination to ask if plaintiffs' counsel was going to object to this line of cross-examination, then I excused the jury to confer with counsel about the matter, and then I immediately gave the jury a curative

7

instruction. Doc. #487 at 38-44. I told the jury: "There is no admissible evidence of Mr. Colon's participation in any theft of copper, and any suggestion from the cross-examination of a theft of copper should be disregarded by you and should not be considered in any event as to Mr. Colon's character in this case." *Id.* at 45.

Plaintiffs agreed to the curative instruction and did not seek a mistrial on the basis of this cross-examination. Oddly enough, plaintiffs then decided to magnify any possible prejudice by eliciting testimony from a later Metro-North witness about the incidence of copper-thieving trespasses on railroad property (Doc. #488 at 69-70). Plaintiffs chose to do so despite the fact that they had previously and successfully moved *in limine* to prevent such testimony from Metro-North's witnesses. Docs. #322, #381. Plaintiffs' own disregard for any prejudice reinforces my conclusion that plaintiffs were not prejudiced by the cross-examination concerning copper theft in light of my intervention and curative instruction. The cross-examination of Arlene Davis about Colon's alleged copper theft at her apartment complex does not warrant a new trial.

### *4. Closing Argument*

Plaintiffs complain about aspects of defendants' closing arguments but fail to quote or cite any portions of the argument transcript as required by D. Conn. L. Civ. R. 7(a)(3). Nor did plaintiffs lodge a timely objection. Doc. #501. Accordingly, plaintiffs' belated and vague complaints about defendants' closing argument do not warrant a new trial.

### CONCLUSION

The Court has considered all the arguments raised in plaintiffs' motion and concludes that they lack merit for substantially the reasons set forth by defendants in their opposition memorandum. Plaintiffs' motion for a new trial (Doc. #511) is DENIED.

It is so ordered.

Dated at New Haven this 22nd day of May 2018.

                                             /s/ *Jeffrey Alker Meyer*
                                             Jeffrey Alker Meyer
                                             United States District Judge