# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| MILTON OMAR COLON and ARLENE DAVIS,<br>    *Plaintiffs*,<br><br>v.<br><br>METRO-NORTH COMMUTER RAILROAD COMPANY, and METROPOLITAN TRANSPORTATION AUTHORITY,<br>    *Defendants*.<br><br>METRO-NORTH COMMUTER RAILROAD COMPANY and METROPOLITAN TRANSPORTATION AUTHORITY,<br>    *Third-Party Plaintiffs*,<br><br>v.<br><br>UNITED ILLUMINATING COMPANY,<br>    *Third-Party Defendant*. | No. 3:13-cv-00325 (JAM) |

## RULING ON CROSS MOTIONS
## FOR JUDGMENT AS TO THIRD PARTY COMPLAINT

This case arises from a lawsuit by plaintiffs Omar Colon and Arlene Davis as a result of severe electrocution injuries sustained by Colon when he climbed a catenary tower along the railroad tracks in New Haven, Connecticut. After plaintiffs filed suit against defendants Metro-North Commuter Railroad Company ("Metro-North") and the Metropolitan Transportation Authority ("MTA"), the defendants in turn filed a third-party complaint for indemnification against the United Illuminating Company ("UI").

1

At issue now is whether UI must indemnify Metro-North and/or the MTA for their costs in defending against plaintiffs' lawsuit. In light of the jury's finding that Colon was not injured by UI's wires, I conclude that UI has no duty to indemnify Metro-North or the MTA.

**BACKGROUND**

The background facts of this case are set forth at greater length in my earlier summary judgment ruling. *See Colon v. Metro-N. Commuter R.R. Co.*, 242 F. Supp. 3d. 65, 69–71 (D. Conn. 2017). As relevant now, Colon was electrocuted on March 17, 2011, after he climbed high up a catenary tower alongside the railroad tracks in New Haven, Connecticut.

At the time of Colon's injury, the State of Connecticut owned the railroad right-of-way, railroad tracks, and the catenary towers. Metro-North operated the railroad pursuant to a contract with the Connecticut Department of Transportation ("CDOT") and the MTA.

The catenary towers carried one set of electrical wires that was owned by Metro-North and used to power the trains. In addition, the catenary tower where Colon was injured also carried a separate set of wires owned by UI. These wires were installed pursuant to a separate transmission line agreement between UI and CDOT. *See* Doc. #515-1 (transmission line agreement).

After Colon climbed high up the tower, he was eventually found dangling upside-down with his body touching one of Metro-North's wires. According to Colon, he found himself in this position because he was somehow stricken or affected by hidden and invisible static electricity from either or both sets of Metro-North and UI wires, such that he then fell into contact with the lower set of Metro-North wires.

After a two-week trial in August 2017, the jury determined that plaintiffs had failed to prove three of the five required elements for their tort claim against Metro-North and the MTA.

This included a specific finding that Colon's injuries were *not* caused by a hidden danger such as static electricity. *See* Doc. #494 at 1; Doc. #496 at 8-9. The jury was also posed a special interrogatory asking specifically whether the UI wires "directly or indirectly caused" Colon's injuries, and the jury found that the UI wires did not directly or indirectly cause Colon's injuries. *Id*. at 3.

Despite the jury's finding that UI's wires did not cause Colon's injury, Metro-North and the MTA seek indemnification from UI for the cost of defending against plaintiffs' lawsuit. The indemnification is sought pursuant to Article X of the UI-CDOT transmission line agreement which provides as follows:

> Power Company [UI] agrees *to indemnify, protect and save harmless the State or State's Designee [Metro-North]* from and against all cost or expense resulting from any and all loss or damage to the property of the State or State's Designee and from any and all loss of life or property, or injury or damage to the person or property of any third person, firm or corporation … a*nd from any and all claims, demands or actions for such loss, injury or damage directly or indirectly caused by the presence or use* or the construction, installation, maintenance, removal, change or relocation and subsequent removal of the Transmission System and appurtenances thereto, excepting such loss, damage or injury as shall be due solely to the negligence of the agents or servants of the State or State's designee.

Doc. #515-1 at 22-23 (emphasis added). Having agreed that it is for the Court to decide whether UI is liable for indemnification in light of the jury's finding, both parties now move for judgment as to the third-party complaint. *See* Docs. #514, #520.

### Discussion

Under Connecticut law, "a contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in light of the situation of the parties and the circumstances connected with the transaction. The intent of the parties is to be ascertained by a fair and reasonable construction of the written words and the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly

3

applied to the subject matter of the writing." *Murtha v. City of Hartford*, 303 Conn. 1, 7 (2011) (internal citations, quotation marks, and alterations omitted). "Where the language of the writing is clear and unambiguous, the writing is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Id*. at 7–8 (internal citations, quotation marks, and alterations omitted).

Metro-North insists that UI's duty to indemnify has been triggered solely because Colon made a claim against Metro-North relating to UI's wires and because the indemnification provision refers in part to "any and all *claims*, demands or actions for such loss, injury or damage directly or indirectly caused by the presence or use" of UI's transmission wires. Doc. #515 at 23. In essence, Metro-North argues that the contract creates something akin to a "duty to defend" on the part of UI.

The duty to defend is a familiar insurance concept in which an insurance company will typically be contractually obliged to investigate and defend against any covered claims brought against the insured, regardless whether those claims prove to have any merit. *See, e.g.*, *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 463-64 (2005) (discussing whether allegations fell within ambit of insurer's duty to defend). The duty to defend is generally triggered by the allegations of the complaint itself, and the question is simply whether the allegations would, if true, fall within the scope of the insurance coverage. *See ibid*. According to Metro-North, because the indemnification obligation in this case extends to *claims*, not just actual loss, this reflects an indemnification duty that is commensurate with a duty to defend.

I don't agree. As shown by the numerous cases cited by Metro-North, contracts creating a duty to defend will typically employ direct and explicit language in doing so. *See, e.g.*, *id*. at 465 (contract providing for "duty to defend a suit seeking damages for bodily injury or property

4

damage which may be covered . . ."); *see also R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 273 Conn. 448, 453 (2005) (contract providing that "the [insurance] company shall have the right and duty to defend any suit against the insured . . . even if any of the allegations of the suit are groundless, false or fraudulent"); *Wentland v. Am. Equity Ins. Co.*, 267 Conn. 592, 597, 602 (2004) (explicit duty to defend provision); *Town of Fairfield v. D'Addario*, 149 Conn. 358, 360 (1962) (defendant obliged to "defend any suit brought against" plaintiff); *Gemma Power Systems, LLC v. Smedley Co.*, 2017 WL 3927642, at *1 (Conn. Super. Ct. 2017) (defendant obliged "to defend, indemnify and hold harmless").

Yet another example of this kind of explicit duty-to-defend language can be found elsewhere in the transmission agreement between UI and CDOT at issue in this case. Article III, Section (*o*) requires UI to maintain insurance coverage, listing both CDOT and Metro-North as additional insureds, and requires that this insurance "shall state that the insurance company or companies shall agree to investigate *and defend* the insured against *all claims for damages, even if groundless*." Doc. #515-1 at 14 (emphasis added).

The parties in this case clearly knew how to employ duty-to-defend language to indemnify against the costs of defending even meritless claims. They did not do so in the relevant provision of the transmission agreement that defines UI's duty to indemnify. It may be reasonably inferred that this choice not to use explicit duty-to-defend language was deliberate, and that therefore the indemnification provision does not create a duty to defend.

Nor need I interpret the indemnification provision as creating a duty to defend in order to avoid redundancy. There is an entirely plausible reading of the contract under which the obligation to defend for any "claim" of loss caused by the UI wires goes beyond the obligation to indemnify against actual loss, but not so far as a duty to defend. The key is that the "claim" must

5

be one for some "loss, injury or damage" that was actually "directly or indirectly caused by" UI wires. So long as that factual predicate of actual causation is satisfied, a stronger argument exists that UI would be obligated to indemnify against the costs of defending a claim, even if Metro-North were not ultimately held liable. Thus, for example, if the jury had found that Colon was injured by a hidden danger and this injury was caused by UI's wires, but that Metro-North was nevertheless not liable for some other reason (such as the failure of plaintiffs to prove prior constant intrusion), then Metro-North would have had a stronger argument for indemnification from UI.

This reading of the contract affords meaning to every provision, while also respecting the parties' decision not to create an explicit duty to defend on the part of UI. It is a sensible interpretation in light of the purpose of the indemnification provision, which is to ensure that the presence of UI's wires does not impose costs or burdens on Metro-North that it would not otherwise bear. This purpose requires only that UI indemnify for those costs that are in fact caused by UI's transmission wires.

Metro-North points to the distinction between indemnification for *loss* and indemnification for *liability*, suggesting that the latter implies a duty to defend. *See* Doc. #515 at 6. But the distinction between loss and liability coverage is simply one of timing: a duty to indemnify against liability is triggered as soon as the underlying event giving rise to liability occurs, while the duty to indemnify against loss is not triggered until the indemnitee is actually made to bear the loss—*e.g.*, by a judgment in favor of the injured party. *See Amoco Oil Co. v. Liberty Auto & Electric Co.*, 262 Conn. 142, 149-51 (2002). This distinction has nothing to do with whether an indemnity provision extends beyond loss or liability to a duty to defend.

+

## CONCLUSION

For the foregoing reasons, the motion for judgment as to the third-party claim by third-party plaintiffs Metro-North and the MTA (Doc. #514) is DENIED, and the motion for judgment as to the third-party claim by third-party defendant UI (Doc. #520) is GRANTED.

It is so ordered.

Dated at New Haven this 22nd day of May 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge